**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7                    IN THE UNITED STATES DISTRICT COURT

8                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                              SAN JOSE DIVISION

10   ANGELICA GARCIA,                      CASE NO. 5:12-cv-06491 EJD

11                                         **ORDER GRANTING DEFENDANTS'**
                          Plaintiff(s),    **MOTION FOR PARTIAL SUMMARY**
12        v.                               **JUDGMENT**

13   FORTIS CAPITAL IV, LLC, et. al.,
                                           [Docket Item No(s). 53]
14
                          Defendant(s).
15   _____/

16        In this action alleging unlawful debt collection activity, Defendants Fortis Capital IV, LLC

17   ("Fortis"), Curtis O. Barnes, P.C. ("LOCOB"), and Nick Tafoya ("Tafoya")[1] move for partial

18   summary judgment on Plaintiff Angelica Garcia's ("Plaintiff") request for punitive damages and her

19   claim for negligent hiring and supervision.  See Docket Item No. 53.  Plaintiff filed written

20   opposition to the motion.  See Docket Item No. 66.  The court found this matter suitable for

21   disposition without oral argument pursuant to Civil Local Rule 7-1(b) and vacated the associated

22   motion hearing.

23        Having carefully reviewed the parties' papers in conjunction with the record, the court has

24   determined that Defendants' motion is meritorious.  It will be granted for the reasons stated below.

25              **I.    FACTUAL AND PROCEDURAL BACKGROUND**

26        Plaintiff is employed by Kaiser Permanente.  See Decl. of Ben Dupre ("Dupre Decl."),

27
_____
28        [1] In this order, these three defendants are referred to collectively as "Defendants."

United States District Court

For the Northern District of California

1    Docket Item No. 67, at Ex. 1, 14:1-3.  Her job duties include answering telephones and assisting

2    injured patients at the front desk in the physical therapy department.  <u>Id.</u> at Ex. 1, 15:13-16:2.

3         Plaintiff allegedly defaulted on a debt with a primary lender, Beneficial California, who sold

4    the debt to Fortis.  <u>See</u> Compl., Docket Item No. 1, at ¶ 18.  Fortis engaged a third party

5    administrator, Presidio Financial, which retained LOCOB to undertake collection efforts with

6    Plaintiff.  <u>See</u> Decl. of Robert Barnes ("R. Barnes Decl."), Docket Item No. 53, at ¶ 2.  The

7    managers of LOCOB during the relevant time period were Curtis O. Barnes ("C. Barnes"), Robert

8    Barnes ("R. Barnes") and Michael McCoy ("McCoy").  <u>Id.</u>, at ¶ 1; Decl. of Curtis O. Barnes ("C.

9    Barnes Decl."), Docket Item No. 53, at ¶ 1; Decl. of Michael McCoy ("McCoy Decl."), Docket Item

10   No. 51, at ¶ 1.

11        Tafoya is a former employee of LOCOB and was hired to work in the Colorado office in

12   May, 2012.  <u>See</u> McCoy Decl., at ¶ 9.  At the time of his hire, Tafoya had 13 years experience in the

13   debt collection industry and was recommended to LOCOB by a collection manager in the office,

14   Dan Sonnleitner.  <u>See</u> Decl. of Nathaniel R. Lucey ("Lucey Decl."), Docket Item No. 53, at Ex. C,

15   34:6-19.  Tafoya received training from LOCOB in the area of compliance with federal debt

16   collection laws prior to working as a collector for the firm.  <u>Id.</u> at Ex. C, 34:19-23, 35:7-14; Ex. D,

17   75:1-5.  He was eventually terminated from LOCOB on February 25, 2013, because he was

18   attracting complaints.  <u>Id.</u> at Ex. D, 29:20-30:12; Ex. F, 6:9-7:15; McCoy Decl., at ¶ 16.

19        Relevant to this motion are the following contacts between Plaintiff and Tafoya, as alleged in

20   the Complaint and described by Plaintiff at deposition:

21        On September 10, 2012, Tafoya called Plaintiff at her home and demanded that Plaintiff pay

22   $3,000 and asked for her work telephone number.  <u>See</u> Compl., at ¶¶ 21-26; Dupre Decl., at Ex. 1,

23   81:2-5.  She did not give Tafoya her work telephone number, although Tafoya informed Plaintiff he

24   could obtain that information from another source.  <u>Id.</u>  Plaintiff told Tafoya not to call her at work.

25   <u>Id.</u>

26        One month later, on October 10, 2012, Tafoya called Plaintiff at work on the telephone line

27   used by patients.  <u>See</u> Compl., at ¶¶ 40-41; Dupre Decl., at Ex.1, 97:16-25.  Plaintiff was informed

28   by her co-worker that Tafoya wished to speak with her.  <u>See</u> Compl., at ¶ 41; Dupre Decl., at Ex. 1,

102:22-103:7.  Plaintiff left her job duties to take the call in a backroom.  See Compl., at ¶ 43-44; Dupre Decl., at Ex. 1, 103:16-21.  Plaintiff told Tafoya that she could not accept personal calls at work, but Tafoya demanded that Plaintiff pay $3,000 by the end of the day.  See Compl., at ¶¶ 44-48; Dupre Decl., at Ex. 1, 107:7-25.  Although Plaintiff continued to tell Tafoya she could not accept his call, he said to Plaintiff something to the following effect: "How would you feel if your employer knew about your debt?"  Id.

After ending the call with Tafoya, Plaintiff immediately contacted a consumer rights attorney and then called Tafoya in order to let him know the name and contact information for the attorney.  See Compl., at ¶¶ 54-57; Dupre Decl., at Ex. 1, 128:11-22, 130:21-131:5.  Tafoya, however, again demanded payment.  See Compl., at ¶ 56.  Plaintiff eventually terminated the call.  See Compl., at ¶ 57; Dupre Decl., at Ex. 1, 138:2-5.

Plaintiff's co-worker then received another call from Tafoya on October 10th soon after Plaintiff terminated the prior call.  See Compl., at ¶ 60; Dupre Decl., at Ex. 1, 138:6-22.  Tafoya requested to speak to the payroll department, but Plaintiff intercepted the call.  Id.  Plaintiff told Tafoya to contact her attorney and to cease communication with her while she was at work.  See Compl., at ¶ 63; Dupre Decl., at Ex. 1, 206:11-21.  She also told Tafoya that the payroll department should not be involved in the matter and then terminated the call.  Id.

Plaintiff filed the Complaint underlying this action on December 21, 2012, asserting violations of various provisions of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 et. seq., the Rosenthal Fair Debt Collections Practices Act, California Civil Code § 1788 et. seq., intrusion upon seclusion, and negligent training and supervision.  In addition to statutory damages, Plaintiff requests an award of punitive damages.  This motion followed.

## II.  LEGAL STANDARD

A motion for summary judgment should be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).  The moving party bears the initial burden of informing the court of the basis for the motion and identifying the portions of the pleadings, depositions, answers to interrogatories, admissions, or affidavits that demonstrate the

United States District Court
For the Northern District of California

3

1    absence of a triable issue of material fact.  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

2           If the moving party meets this initial burden, the burden then shifts to the non-moving party

3    to go beyond the pleadings and designate specific materials in the record to show that there is a

4    genuinely disputed fact.  Fed. R. Civ. P. 56(c); Celotex, 477 U.S. at 324.  The court must draw all

5    reasonable inferences in favor of the party against whom summary judgment is sought.  Matsushita

6    Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

7           However, the mere suggestion that facts are in controversy, as well as conclusory or

8    speculative testimony in affidavits and moving papers, is not sufficient to defeat summary judgment.

9    See Thornhill Publ'g Co. v. GTE Corp., 594 F.2d 730, 738 (9th Cir. 1979).  Instead, the non-moving

10   party must come forward with admissible evidence to satisfy the burden.  Fed. R. Civ. P. 56(c); see

11   Hal Roach Studios, Inc. v. Feiner & Co., Inc., 896 F.2d 1542, 1550 (9th Cir. 1990).

12          A genuine issue for trial exists if the non-moving party presents evidence from which a

13   reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the

14   material issue in his or her favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986);

15   Barlow v. Ground, 943 F.2d 1132, 1134-36 (9th Cir. 1991).  Conversely, summary judgment must

16   be granted where a party "fails to make a showing sufficient to establish the existence of an element

17   essential to that party's case, on which that party will bear the burden of proof at trial."  Celotex, 477

18   U.S. at 322.

### III.   DISCUSSION

20          Defendants move for summary judgment on two issues.  First, Defendants argue there are no

21   material facts in dispute to justify an award of punitive damages.  Second, Defendants argue there

22   are no material facts in dispute as to Plaintiff's claim for negligent training and supervision.  These

23   issues are discussed below with regard to the sole remaining defendant, LOCOB.[2]

### A.    Punitive Damages

25          Defendants argue that punitive damages are unavailable against LOCOB because evidence of

26   malice, oppression or fraud is absent from the record, primarily because LOCOB neither authorized

27   _____

28          [2] Judgments were entered against Tafoya and Fortis on February 14, 2014, pursuant to
     Federal Rule of Civil Procedure 68.  See Docket Item Nos. 58, 59.

United States District Court
For the Northern District of California

4

1    nor ratified Tafoya's conduct toward Plaintiff.

2         In California, punitive damages can be awarded "where it is proven by clear and convincing

3    evidence that the defendant has been guilty of oppression, fraud, or malice."  Cal. Civ. Code §

4    3294(a).  Subsection (c) of § 3294 further defines the types of offensive conduct that can support a

5    punitive damages award: (1) "'Malice' means conduct which is intended by the defendant to cause

6    injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and

7    conscious disregard of the rights or safety of others;" (2) "'Oppression' means despicable conduct

8    that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights; (3)

9    "'Fraud' means an intentional misrepresentation, deceit, or concealment of a material fact known to

10   the defendant with the intention on the part of the defendant of thereby depriving a person of

11   property or legal rights or otherwise causing injury."  The availability of punitive damages has "been

12   recognized for common law invasion of privacy claims in the context of unlawful debt collection

13   practices."  Fausto v. Credigy Servs. Corp., 598 F. Supp. 2d 1049, 1057 (N.D. Cal. 2009) (citing

14   Sanchez v. Client Servs., Inc., 520 F. Supp. 2d 1149, 1164-65 (N.D. Cal. 2007)).

15        Also relevant here is Civil Code § 3294(b), which describes when punitive damages can be

16   awarded against an employer for the conduct of an employee.  That subsection states:

17             An employer shall not be liable for damages pursuant to subdivision
               (a), based upon acts of an employee of the employer, unless the
18             employer had advance knowledge of the unfitness of the employee and
               employed him or her with a conscious disregard of the rights or safety
19             of others or authorized or ratified the wrongful conduct for which the
               damages are awarded or was personally guilty of oppression, fraud, or
20             malice.  With respect to a corporate employer, the advance knowledge
               and conscious disregard, authorization, ratification or act of
21             oppression, fraud, or malice must be on the part of an officer, director,
               or managing agent of the corporation.
22

23        Here, Plaintiff can request punitive damages because she has asserted a claim for invasion of

24   privacy (intrusion upon seclusion).  But while her the pleadings raise the possibility of punitive

25   damages, Defendants nonetheless contend they are unwarranted.  Indeed, Defendants argue there are

26   no facts, disputed or otherwise, to show what must be proven for employer liability under § 3924(b);

27   specifically, that officers, directors or managers at LOCOB were aware of Tafoya's unfitness as a

28   debt collector when it hired him, or that these same individuals authorized or ratified Tafoya's

**United States District Court**
For the Northern District of California

5

United States District Court
For the Northern District of California

1    conduct toward Plaintiff while he was working for the firm.[3]  As to the former point, Defendants

2    point out that Tafoya had a 13-year work history in the area of debt collection prior to employment

3    with LOCOB, that there is nothing in the record to show that Tafoya had been involved in prior

4    incidents of harassment when he was hired, and that LOCOB provided Tafoya training on the

5    FDCPA and tested him on the subject regularly.  See McCoy Decl., at ¶¶ 10-11.

6        As to the latter point, Defendants note the absence of evidence demonstrating that Tafoya's

7    supervisor or the managers of LOCOB knew of Tafoya's problematic behavior.  Indeed, McCoy

8    denied authorizing any illegal conduct while he was Tafoya's supervisor.  Id. at ¶ 15.  LOCOB's

9    managers, C. Barnes and R. Barnes, also denied authorizing any of Tafoya's conduct.  See C. Barnes

10   Decl., at ¶ 8; R. Barnes Dec., at ¶ 4.

11       In response, Plaintiff did not produce evidence to show that Tafoya had engaged in harassing

12   behavior prior to his employment at LOCOB or that anyone at LOCOB was aware of any such

13   behavior when he was hired.  Nor did Plaintiff produce any direct evidence to show that McCoy, C.

14   Barnes or R. Barnes knew of, authorized or ratified Tafoya's conduct.  Instead, Plaintiff argues

15   based on certain circumstantial evidence that Tafoya's conduct was ratified by LOCOB.

16   Specifically, Plaintiff relies on complaints filed in other lawsuits alleging that LOCOB engaged in

17   harassing debt collection activity, as well as the testimony of LOCOB principals, all whom stated (1)

18   that Tafoya was not fired for violations of the law or of LOCOB policy, (2) that they could not

19   identify any mistakes in the way Plaintiff's account was handled by LOCOB, and (3) that LOCOB's

20   collections policy was not modified as a result of any specific lawsuit.  Plaintiff believes this

21   evidence suggests notice to LOCOB of problematic collections strategies and a refusal by LOCOB

22   to either repudiate the conduct or change its allegedly unlawful policy.

23       "'[R]atification' is the 'confirmation and acceptance of a previous act.'"  Cruz v. Homebase,

24

25   _____

26   [3] Defendants do not appear to argue, at least in this motion, that Tafoya's conduct could not
     justify a punitive damages award if proven.  That may be because the determination of whether
     Tafoya's conduct qualifies as malicious, oppressive or fraudulent would be a question for the jury in

27   this case, if it was to proceed.  See Sanchez, 520 F. Supp. 2d at 1165.  Since Plaintiff attributes
     certain statements to Tafoya, which only Plaintiff, Tafoya and Plaintiff's co-worker can confirm or

28   deny, the jury would need to assess credibility in order to resolve the punitive damages question.  Id.

6

83 Cal. App. 4th 160, 168 (2000) (quoting <u>Black's Law Dictionary</u>, 1268 (7th ed. 1999)).  "For

purposes of determining an employer's liability for punitive damages, ratification generally occurs

where, under the particular circumstances, the employer demonstrates an intent to adopt or approve

oppressive, fraudulent, or malicious behavior by an employee in the performance of his job duties."

<u>College Hosp. Inc. v. Super. Ct.</u>, 8 Cal. 4th 704, 726 (1994).  "Corporate ratification in the punitive

damages context requires *actual knowledge* of the conduct and its outrageous nature."  <u>Id</u>. (emphasis

added).  This is because "[a] corporation cannot confirm and accept that which it does not actually

know about."  <u>Cruz</u>, 83 Cal. App. 4th at 168.

Ratification can sometimes be proven by circumstantial evidence when direct evidence does

not exist.  <u>Siva v. General Tire & Rubber Co.</u>, 146 Cal. App. 3d 152, 159 (1983).  Indeed, it can be

inferred if the employer, *knowing of an employee's actions*, fails to fully investigate or fails to

repudiate the employee's conduct by redressing the harm and punishing the employee.  <u>Fisher v. San</u>

<u>Pedro Peninsula Hosp.</u>, 214 Cal. App. 3d 590, 621 (1989) (emphasis added).

Considering the evidence in the light most favorable to Plaintiff, a reasonable jury could not

find that LOCOB ratified Tafoya's conduct such that it could be liable for punitive damages.  On the

issue of notice to the employer - which is notably still required even when proving ratification by

circumstantial evidence - the 12 other complaints submitted by Plaintiff do little to show that

LOCOB was aware of Tafoya's offensive interactions with Plaintiff.  Most are irrelevant to this

inquiry because they predate Tafoya's employment with LOCOB.[4]  Of the three that were filed

during Tafoya's period of employment, only the Frano complaint actually names Tafoya.  But that

case, although seemingly relevant, ended in a confidential settlement without an admission of

---

[4] Plaintiff's request for judicial notice (Docket Item No. 64) is GRANTED as to Item 1, but DENIED as to Items 2 through 13 because the court finds those documents irrelevant to the issues raised in this motion.  The case cited by Plaintiff in support of admitting this evidence, <u>McCollough v. Johnson</u>, 637 F.3d 939 (9th Cir. 2010), does not compel a different conclusion because it is easily distinguished.  In <u>McCollough</u>, the evidence admitted at trial was testimony from third-parties "about their experiences being sued by" the defendant, which was relevant to the plaintiff's claims for malicious prosecution and abuse of process.  In contrast, Plaintiff seeks to introduce unproven allegations to show notice of the conduct of a particular employee, Tafoya, even though most of the allegations do not name Tafoya.  Moreover, the two third-party plaintiffs deposed in this case, Frano and Donovan, provided no information tending to either prove or disprove the issues raised here.  As to Defendants' related evidentiary objections (Docket Item No. 72), Objection 12 is OVERRULED but Objections 1, 2, and 13 through 23 are SUSTAINED because the evidence is irrelevant.

United States District Court
For the Northern District of California

1   liability as to Frano.  It does not reveal anything about Tafoya's conduct toward Plaintiff.  At most,

2   the only observation that can be made from the Frano complaint under these circumstances is the

3   fact that the document was filed in court.  See In re Bare Escentuals, Inc. Sec. Litig., 745 F. Supp. 2d

4   1052, 1067 (N.D. Cal. 2010) ("[T]he court may take judicial notice of the existence of unrelated

5   court documents, although it will not take judicial notice of such documents for the truth of the

6   matter asserted therein.").  As of now, the allegations in the Frano complaint are just that -

7   allegations.

8        But even if notice to LOCOB is assumed, the evidence shows that LOCOB repudiated any of

9   Tafoya's potentially illegal conduct.  LOCOB terminated Tafoya approximately 3 months after

10   Plaintiff's initiated this case because he was attracting complaints.  Without doubt, termination by an

11   employer is the ultimate type of repudiation.  Plaintiff takes issue with LOCOB's given reason for

12   Tafoya's termination because she believes a jury could find it to be an attempt to sweep systematic

13   problems "under the rug" or a way to avoid making changes to LOCOB policy.  In reaching this

14   conclusion, however, Plaintiff makes an assumption unsupported by the record.  Here, there is no

15   evidence showing that LOCOB's collections policy, or any part of it, required its collectors to

16   violate the law such that it should have been modified as a result of anything Tafoya did.  Moreover,

17   Plaintiff has not cited any authority which would have required LOCOB to modify its collections

18   policy when it handed down the ultimate employment sanction to Tafoya.

19        In the end, there is not a dispute of material fact on the issue of ratification since the evidence

20   shows that LOCOB was unaware of Tafoya's conduct and discharged him when it became aware in

21   any event.  Plaintiff, therefore, cannot meet the requirement of § 3924(b) in order to impose punitive

22   damages on LOCOB.  As such, Defendants are entitled to summary judgment on this issue.

23        **B.    Negligent Training and Supervision**

24        Defendants argue the undisputed material facts are insufficient to establish a claim for

25   negligent training and supervision against LOCOB.

26        "California case law recognizes the theory that an employer can be liable to a third person

27   for negligently hiring, supervising, or retaining an unfit employee."  Doe v. Capital Cities, 50 Cal.

28   App. 4th 1038, 1054 (1996).  "Liability for negligent hiring and supervision is based upon the

8

United States District Court

For the Northern District of California

1   reasoning that if an enterprise hires individuals with characteristics which might pose a danger to

2   customers or other employees, the enterprise should bear the loss caused by the wrongdoing of its

3   incompetent or unfit employees." Mendoza v. City of Los Angeles, 66 Cal. App. 4th 1333, 1339

4   (1998). "[T]he cornerstone of a negligent hiring theory is the risk that the employee will act in a

5   certain way and the employee does act in that way." Capital Cities, 50 Cal. App. 4th at 1054.

6   Moreover, "there can be no liability for negligent supervision 'in the absence of knowledge by the

7   principal that the agent or servant was a person who could not be trusted to act properly without

8   being supervised.'" Juarez v. Boy Scouts of America, Inc., 81 Cal. App. 4th 377, 395 (2000)

9   (quoting Noble v. Sears, Roebuck & Co., 33 Cal. App. 3d 654, 664 (1973)).

10           Here, as noted previously, there are not facts to suggest Tafoya, at the time he was hired by

11   LOCOB, exhibited a history of unlawful debt collection activity during his lengthy experience in the

12   industry or that he possessed any particular qualities that would have put LOCOB on notice of a

13   tendency to violate the law. In fact, the uncontroverted evidence supports a contrary inference.

14   Accordingly, the court must conclude that Plaintiff cannot maintain a claim based on negligent

15   hiring.

16           What remains is negligent supervision. But again, Plaintiff has not produced any evidence to

17   show that LOCOB was aware of offensive conduct by Tafoya while he was working at the firm.

18   Indeed, the evidence shows that LOCOB trained Tafoya on the applicable law and tested him on the

19   subject before he started to make collections calls and continued to test him after. See McCoy Decl,

20   at ¶¶ 3-9. LOCOB managers also supervised its collectors, including Tafoya, by monitoring live

21   telephone calls and reviewing recorded calls. Id. Moreover, Plaintiff never complained to LOCOB

22   about Tafoya prior to initiating this lawsuit, and Tafoya was terminated soon after LOCOB learned

23   of Plaintiff's complaint. See Lucey Decl., at Ex. B, at 67:24-69:13. Thus, any particular act by

24   Tafoya alleged in litigation, either by Plaintiff or any other individual, cannot be used to impose

25   liability for negligent supervision because there is nothing to suggest that LOCOB had actual

26   knowledge or reason to suspect that Tafoya had done anything in violation of the law prior to

27   learning of Plaintiff's experience with him.

28           Similar to her argument with regard to punitive damages, Plaintiff suggests that LOCOB

9

1    knew Tafoya was likely to engage in abusive behavior because LOCOB's collections policy allows

2    for it.  However, as before, Plaintiff has not demonstrated that LOCOB's policy encourages or

3    allows for violations of debt collection laws.  Plaintiff's theory is therefore rejected.

4           The court finds no dispute of material fact on the claim for negligent hiring and supervision.

5    Summary judgment in favor of Defendant will be granted on this claim.

6                                    **IV.    ORDER**

7           Based on the foregoing, Defendants' Motion for Partial Summary Judgment (Docket Item

8    No. 53) is GRANTED.  Summary Judgment is entered in favor of LOCOB as to Plaintiff's request

9    for punitive damages and as to her claim for negligent hiring and supervision.[5]

10   **IT IS SO ORDERED.**

11

12   Dated:  May 6, 2014                          

13                                                 EDWARD J. DAVILA
                                                   United States District Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
         _____
            [5] The court rules as follows on Defendants' remaining evidentiary objections: Objections 4
         through 7 are SUSTAINED but Objections 3 and 8 through 11 are OVERRULED.

                                         10
         CASE NO. 5:12-cv-06491 EJD
         ORDER GRANTING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

United States District Court
For the Northern District of California